**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CamMate Systems, Inc., | No. CV 06-0831-PHX-JAT |
| Plaintiff/Counterdefendant, | **ORDER** |
| vs. | |
| Telescopic, LLC, | |
| Defendant/Counterclaimant. | |

Plaintiff CamMate Systems, Inc. ("CamMate") filed this lawsuit against Defendant Telescopic, LLC ("Telescopic") seeking, among other things, damages for allegedly breaching a contract for the sale of three cranes.[1] Telescopic counterclaimed seeking injunctive relief and damages for CamMate's alleged misappropriation of trade secrets and alleged breach of the same contract.[2] The parties have filed cross-motions for partial summary judgment. For the following reasons, the Court will grant in part and deny in part CamMate's motion and will grant Telescopic's motion.

---

[1] CamMate also asserts a conversion claim against Telescopic. This claim, however, is not implicated by the cross-motions under consideration and will proceed to trial.

[2] Telescopic also filed a counterclaim for conversion that it withdrew in response to CamMate's motion for partial summary judgment. Based on this withdrawal, the Court will grant CamMate's motion for summary judgment as to this counterclaim.

**I.     Background**

In 2003 and 2004, Telescopic designed and built a telescoping camera crane later named the "Telescopic Jib 2.0." Telescopic claims that it was the first camera crane capable of being operated by only one person.

In late 2004 or early 2005, Telescopic pitched the new product to CamMate after requiring CamMate to sign an agreement that prohibited it from duplicating the crane "in any manner whatsoever." [Telescopic's Controverting Statements of Facts ("CSOF") (Doc. # 89) Ex. 2.] Telescopic hoped to establish a business relationship of some kind with the larger company.

In April or May of 2005, CamMate and Telescopic entered into an oral contract for the sale of three Telescopic Jib 2.0 cranes. Although the parties disagree about the remaining terms of this contract, the following facts are undisputed. Telescopic tendered delivery of the first crane under the contract in November 2005. CamMate inspected the crane and discovered that the crane had several defects that rendered it "not acceptable." [Telescopic's Statement of Facts ("SOF") (Doc. # 81) ¶ 11.] Nevertheless, because CamMate had already entered into a contract to resell the crane to another buyer, CamMate decided to accept the crane and to attempt to fix the problems itself. [*Id.* ¶¶ 13-14, Ex. 2 at 35-38; Complaint (Doc. # 99) ¶ 6.] To this end, CamMate made a number of unauthorized modifications to the crane.[3] After these attempted repairs failed, CamMate purported to revoke its acceptance of the crane. [Doc. # 99 ¶ 6.] Neither party has

---

[3] CamMate concedes that it made the following unauthorized modifications to the crane: (1) it removed "the logic and power boards from the motor" and installed an "original logic board into the motor assembly"; (2) it changed the crane's "belt system to a metal chain system"; (3) it "[a]dded Dynamite plating to the crane"; (4) it "[i]nstalled and realigned belts"; (5) it "[i]nstalled a pan brake"; (6) it machined down "the crane's cross shaft"; (7) it "[i]nstalled a 'hangman joint,' or 'swivel joint,' . . . onto the end of the shaft on the motor assembly joint"; (8) it "[r]emoved a lever assembly to install the swivel joint"; (9) it "[r]emoved an idler block and installed a new idler gear with a bearing"; (10) it "[r]emoved the 'pillow block' and installed a double roller gear"; and (11) it [r]eplaced belts and pulleys with a gear system." [Compare CamMate's CSOF (Doc. # 90) ¶ 35 with Doc. # 81 ¶ 35.]

- 2 -

1 performed further under the contract for the sale of the three cranes, and both now claim
2 that the other is in breach of that agreement.

3 At some point before or after the events of November 2005, CamMate began
4 developing a telescoping camera crane of its own. In doing so, Telescopic contends that
5 CamMate misappropriated its "trade secret" and breached the agreement not to duplicate.

6 **II.    Legal Standard**

7 Under Rule 56(a) and (b) of the Federal Rules of Civil Procedure, a party may seek
8 "summary judgment on all or part of the claim." Summary judgment should be granted
9 when "there is no genuine issue as to any material fact and . . . the movant is entitled to
10 judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a fact is "genuine"
11 if the evidence is such that a reasonable jury could return a verdict for the nonmoving
12 party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's bare
13 assertions, standing alone, are insufficient to create a genuine issue of fact and defeat a
14 motion for summary judgment. *Id.* at 247-48.

15 **III.   Discussion**

16 *A. CamMate's Motion for Partial Summary Judgment*

17 CamMate moves for summary judgment on Count Three of Telescopic's
18 Counterclaim, which is entitled "Misappropriation of Trade Secrets." As the parties'
19 summary-judgment filings have made clear, this Count actually alleges two discrete
20 theories of liability: misappropriation of trade secrets and breach of noncompete
21 agreement. The Court will treat these theories separately, as CamMate moves for
22 summary judgment on Count Three regardless of how it is construed. The parties agree
23 that Arizona law applies.

24 <u>1. Misappropriation of Trade Secrets</u>

25 CamMate contends that it is entitled to summary judgment on the trade-secrets
26 theory because Telescopic has allegedly failed to present sufficient evidence of a "trade
27 secret." Under Arizona law,

28 "[t]rade secret" means information, including a . . . device . . . that both:

- 3 -

>(a) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ariz. Rev. Stat. § 44-401(4). The only evidence of a trade secret that the Court has found is the deposition testimony of Louis Duskin, one of Telescopic's two principals. In his deposition, Duskin stated that the Telescopic Jib 2.0 is "the only telescopic jib on the market that meets all the requirements for a jib operator." [Doc # 89 at 6, ¶ 24.] Although it is unclear what "the requirements of a jib operator" are, it is clear that Duskin claims that Telescopic's product possesses a unique capability that is unavailable elsewhere on the market. This circumstantial evidence is sufficient to support a jury finding that Telescopic has a trade secret in the Telescopic Jib 2.0.[4]

CamMate next contends that, even if Telescopic had a trade secret in the Telescopic Jib 2.0, that trade secret was destroyed when Telescopic failed to maintain its secrecy when it displayed the product at a trade show in April 2005. It is true that "matters that are public knowledge are not safeguarded as trade secrets." *Enterprise Leasing Co. of Phoenix v. Ehmke*, 3 P.3d 1064, 1069 (Ariz. Ct. App. 1999). However, merely displaying a product to the public does not equate to revealing a product's trade secrets. Onlookers cannot discern the product's internal design, the way in which it was assembled, or the research and development that went into designing and constructing the product by merely viewing it. Even products that are sold on the open market receive trade-secret protection for a period of time. *See* James Pooley, Trade Secrets § 4.04[d]

---

[4] The Court acknowledges that Duskin refused to describe the confidential information allegedly protected as a trade secret when asked to do so during his deposition. [CamMate's SOF (Doc. # 84) ¶ 9.] CamMate contends that this refusal bars Telescopic from presenting a trade-secrets claim to the jury. The Court disagrees. As the party seeking summary judgment, it is CamMate's burden to show the absence of a genuine issue of material fact. Duskin's general statements regarding the Telescopic Jib 2.0 create a genuine issue of fact. CamMate could have moved to compel Duskin to specifically describe Telescopic's alleged trade secret during discovery, but it chose not to do so.

- 4 -

(2007) (stating that when a product is sold on the market, a "trade secret may exist to the extent of the time it takes to reverse engineer the item in order to discover its secret"). Thus, any trade secret Telescopic may have had in the Telescopic Jib 2.0 was not destroyed by merely displaying the product at a trade show.

Finally, CamMate contends that Telescopic's trade-secrets theory must fail because the individual parts and components of the Telescopic Jib 2.0 are not confidential. In Arizona, however,

> a trade secret may consist of a combination of elements even though each individual component may be a matter of common knowledge. Specifically, a trade secret may include a grouping in which the components are in the public domain but there has been accomplished an effective, successful and valuable integration of those public elements such that the owner derives a competitive advantage from it.

*Ehmke*, 3 P.3d at 1069 (internal citations omitted). Therefore, even if all of the product's parts and components are in the public domain, Telescopic may be entitled to trade-secret protection for its integration of those parts.

To the extent that CamMate argues that Telescopic has failed to produce sufficient evidence of misappropriation, the Court disagrees. "Misappropriation" includes the "use of a trade secret of another without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret." Ariz. Rev. Stat. § 44-401(2)(b). "Improper means" includes "misrepresentation." *Id.* §44-401(1). Telescopic revealed its alleged trade secrets to CamMate only after CamMate signed an agreement not to duplicate the Telescopic Jib 2.0 "in any manner whatsoever." Telescopic contends that by signing this agreement, CamMate was fraudulently inducing Telescopic to reveal its trade secret. This allegation is supported by circumstantial evidence: CamMate did not begin developing its own telescoping camera crane, and purportedly had no interest in doing so, until after Telescopic revealed its product to CamMate. This evidence, coupled with Telescopic's claim that CamMate wrongfully canceled its purchase of the undelivered cranes shortly after receiving the Telescopic Jib 2.0, is sufficient to create a triable issue of fact regarding whether CamMate misappropriated Telescopic's alleged

- 5 -

trade secrets.

In sum, genuine issues of material fact remain as to whether Telescopic had any protectable trade secrets in the Telescopic Jib 2.0 and, if so, whether CamMate misappropriated those secrets. Telescopic's misappropriation-of-trade-secrets counterclaim will therefore proceed to trial.

### 2. Breach of Noncompete Agreement

To the extent that Count Three of Telescopic's Counterclaim can be construed as an attempt to enforce a noncompete agreement, CamMate argues that the agreement at issue is unenforceable as such. Although Telescopic denies that the agreement at issue is a noncompete agreement, it does argue that CamMate is violating a written agreement that prohibits it from duplicating Telescopic's crane "in any manner whatsoever." Telescopic, however, fails to offer any evidence that CamMate duplicated Telescopic's particular product.

Instead, Telescopic relies on the general claim that CamMate is "duplicating" the Telescopic Jib 2.0 by manufacturing a telescoping camera crane that can be operated by a single person — like the Telescopic Jib 2.0. However, this characterization of the agreement prohibits CamMate not only from duplicating Telescopic's particular crane, but from competing in the single-operator telescoping-camera-crane market. As a consequence, the agreement becomes what Telescopic contends it is not: a noncompete agreement. As such, the agreement is unenforceable because it lacks any time or geographic limitations and therefore represents a restraint of trade that is greater than necessary to protect Telescopic's legitimate interest.[5] Restatement (Second) of Contracts § 188(1) cmt. d (1981). Thus, CamMate's motion for summary judgment is granted as to Telescopic's theory of breach of noncompete agreement.

---

[5] Telescopic argues that time and geographic limitations do not apply to noncompete agreements between business competitors in an arms-length transaction. This argument, however, finds no support in the cases cited by Telescopic and is contrary to sections 187 and 188 of the Restatement (Second) of Contracts.

- 6 -

*B. Telescopic's Motion for Partial Summary Judgment*

Telescopic moves for partial summary judgment on two issues. First, Telescopic contends that CamMate did not justifiably revoke its acceptance of the delivered crane. Second, Telescopic contends that it did not grant to CamMate an exclusive right to distribute the Telescopic Jib 2.0. The Court will address each of these contentions in turn.

1. Revocation of Acceptance

Arizona has adopted the Uniform Commercial Code ("UCC"). Ariz. Rev. Stat. §§ 47-2101 to -2725. The contract under consideration — a contract for the sale of three cranes — is a sale-of-goods contract governed by Chapter Two of the UCC. *Id.* §§ 47-2102, -2105(A) (defining "goods"). Although CamMate now argues (for the first time in this lawsuit) that the contract is part of a larger joint venture agreement between the parties that is outside the UCC, this argument directly contradicts the allegations in its Complaint. In its Complaint, CamMate alleges that Telescopic breached a contract for the sale of three cranes, that CamMate "revoked its acceptance of [the delivered] crane," and that, as a result, CamMate is entitled to certain statutory remedies under the UCC.[6] [Doc. # 99 ¶¶ 4-6, 24-33.] No mention of a joint venture appears in the Complaint, and the allegations in the Complaint are inconsistent with the joint-venture theory.[7] From the outset of this litigation, then, CamMate has represented this claim as a breach-of-contract claim subject to the UCC. The Court therefore will not allow CamMate to use this newly concocted joint-venture theory as a shield to avoid the imposition of the UCC.

Applying the UCC to the contract in dispute, the Court finds that CamMate's right

---

[6] In its Complaint, CamMate mistakenly cites to sections in Title 12 of the Arizona Revised Statutes, but it is clear from the remedies sought that CamMate intended to cite to the UCC remedies available in the corresponding sections found in Title 47.

[7] If the parties had entered into a joint venture to manufacture and sell the Telescopic Jib 2.0 as CamMate now alleges, how could Telescopic contract to sell the joint venture's product to its joint venturer as alleged in the Complaint? The breach-of-contract theory and the joint-venture theory are mutually exclusive. CamMate chose to pursue the breach-of-contract theory and must now stay that course.

- 7 -

1  of revocation lapsed as a matter of law before it attempted to revoke its acceptance of the
2  crane.  CamMate accepted the defective crane intending to fix the problems with the
3  crane itself, not on the assumption that the problems would be fixed by Telescopic.
4  When a buyer accepts goods "with knowledge of a non-conformity," the buyer cannot
5  later revoke its acceptance of those goods on the basis of that non-conformity "unless the
6  acceptance was on the reasonable assumption that the non-conformity would be
7  seasonably cured."  Ariz. Rev. Stat. § 47-2607(B) (2005).  More importantly, however,
8  CamMate made numerous unauthorized modifications to the crane after receiving it.  To
9  list just a few, CamMate changed the belt system to a metal chain system, modified the
10 crane's cross shaft by machining it down, removed a lever assembly and installed a
11 swivel joint, designed and installed a new bracket, and replaced belts and pulleys with a
12 gear system.[8]  To be valid, revocation must occur "before any substantial change in
13 condition of the goods which is not caused by their own defects."  *Id.* § 47-2608(B).  In
14 light of CamMate's undisputed modifications, a reasonable jury could not conclude that
15 CamMate revoked its acceptance before substantially changing the condition of the crane.
16 Therefore, CamMate did not, and cannot, justifiably revoke its acceptance of the crane
17 that was delivered under the contract.[9]

### 2. Exclusive Distributorship Agreement

19     At the summary judgment stage of this litigation, CamMate contends for the first
20 time in this lawsuit that Telescopic breached an alleged oral agreement granting
21 CamMate the exclusive right to distribute the Telescopic Jib 2.0.  Telescopic moves for

---

[8] The complete list of modifications appears above in footnote three.

[9] Telescopic also contends that CamMate failed to give timely notice of breach and that, as a result, section 47-2607(C) of the Arizona Revised Statutes bars CamMate from seeking monetary damages under the UCC.  [Telescopic's Reply (Doc. # 92) at 8.] CamMate, however, contends that it informed Telescopic at the time of inspection that the crane was nonconforming.  If this is true, then CamMate gave notice of breach.  Thus, whether CamMate is entitled to damages under the UCC for the defective crane is a question of fact for the jury.

1 summary judgment on this claim arguing that the agreement violates the Statute of Frauds
2 and, in the alternative, that CamMate has offered insufficient evidence to support the
3 claim. The Court, however, sees no reason to address the merits of a claim that has not
4 been pleaded in this case. Even a liberal reading of CamMate's Complaint pursuant to
5 the Federal Rule's notice-pleading standard fails to provide a basis for this claim. As
6 noted above, the allegations in CamMate's Complaint are limited to an agreement dealing
7 with "*three* Telescopic Jib 2.0 cranes," not a purported right to distribute *all* Telescopic
8 Jib 2.0 cranes. To argue, as CamMate does, that a complaint that merely alleges breach
9 of a sale-of-goods contract can be construed as asserting a claim concerning some other
10 agreement that is outside the UCC borders on frivolousness.[10]

**IV.   Conclusion**

To be clear, this Order only narrows the issues for trial; it does not eliminate the need for one. Four claims will proceed to trial: CamMate's claims for breach of contract and conversion and Telescopic's counterclaims for breach of contract and misappropriation of trade secrets.

**IT IS ORDERED** that CamMate's Motion for Partial Summary Judgment (Doc. # 85) is **GRANTED IN PART AND DENIED IN PART** as follows: Telescopic's counterclaim for misappropriation of trade secrets will proceed to trial but only on the misappropriation-of-trade-secrets theory of liability. Telescopic will not be permitted to submit a breach-of-noncompete-agreement theory of liability to the jury, as such theory fails as a matter of law. Telescopic's counterclaim for conversion is dismissed.

**IT IS FURTHER ORDERED** that Telescopic's Motion for Partial Summary Judgment (Doc. # 80) is **GRANTED**. As a matter of law, the following issue will be deemed established at trial: CamMate did not, and cannot, revoke its acceptance of the crane that was delivered under the parties' contract. Furthermore, CamMate will not be

---

[10] This discussion applies with equal force to any attempt by CamMate to assert a claim for breach of a joint venture agreement.

1  permitted to assert claims for breach of an exclusive distributorship agreement or breach
2  of a joint venture agreement at trial, as it has not pleaded any such claims in this case.
3      DATED this 23rd day of January, 2008.

_____
James A. Teilborg
United States District Judge